Good morning. May it please the court, my name is Soren Rotman and I represent the petitioner Emiliano Chavez. And if I may, I would like to reserve one minute for rebuttal. The Board of Immigration Appeals erred in finding Mr. Chavez removable based solely on a form I-213 where Mr. Chavez consistently and repeatedly challenged his reliability and where he was denied the opportunity to review the statements attributed to him by the INS agents and denied the opportunity to cross-examine those agents who prepared the form. Didn't you raise this argument before our prior panel on the first round of appeals? Yes. And you lost on it then. Why are you not bound by law to re-argue the same argument here that we decided adversely to you the last time you went before? My understanding is that the reason for the dismissal of the first petition was a lack of jurisdiction. But in that case, don't you have to look at the facts? In other words, the jurisdictional analysis basically collapses into an analysis of the merits because the reason to dismiss for lack of jurisdiction is because he's been convicted of a crime. Well, in this case, not convicted, but a customs officer had a reasonable basis to believe he was involved in drug trafficking. And in order to arrive at the decision that we dismissed it for lack of jurisdiction, you'd have to find that in order to get there, wouldn't you? I don't know that for sure. There's no evidence in the court's opinion. What other basis would there have been to have dismissed for lack of jurisdiction? We looked at your briefs, and you made exactly the same arguments to our prior panel that you made in your briefing to this panel. So it looks to me like the argument was precisely the same, and you lost. So why doesn't law of the case apply, and we're done? I think the understanding throughout this second petition was that the first petition was dismissed for lack of jurisdiction, but that under Real ID Act, the jurisdiction was restored, and we first filed this as a habeas. Real ID Act gets you back here basically through the transfer provision. Nobody's saying that you don't have the ability to get here. But that's a different analysis from whether or not the same issue was decided adversely to the petitioner, and he's barred by the prior determination of the panel regardless of how he comes back to us the second time. The Real ID Act does not serve as an exception to the law of the case doctrine. It's just a vehicle by which you get here, isn't it? Well, this is certainly not an argument that was raised by the government, and it's certainly something that we don't have jurisdiction. We don't have jurisdiction. I understand. So we can raise it sui sponte, and whether the government missed the issue or not is kind of beside the point. Right. Well, actually, though, this wouldn't be a jurisdictional issue, would it? I don't believe it is. At this point, it would only be a merits issue. What Judge Talmadge is saying is that the jurisdictional determination that was made earlier has an embedded merits decision, which now, although we have jurisdiction under the Real ID Act, or at least have jurisdiction if there's a constitutional or legal question, still, and I have some questions about that, but at least it's possible that the merits question, which determines his removability on the merits, has been determined by the jurisdictional determination that was made earlier, but it's not a jurisdictional issue now, it's a merits issue. Is that right or is that not right? Well, that's certainly what I would argue, that prior to the Real ID Act, there was not necessarily a foundation for jurisdiction in this Court, but now there is, because this is certainly a question of law as to whether the government has met their burden of proof. Okay. So if Judge Berzon is right and we have jurisdiction, why shouldn't we still apply the law of the case doctrine and make a determination on the merits that the prior panel looked at the issue, decided it adversely to you the first time around, and therefore we should find that we have jurisdiction but deny the petition for review on the merits by invoking law of the case? Well, I suppose the Court is entitled to do that, but I would argue that Petitioner has not yet had his opportunity to have this court review. There was no oral argument at the prior petition. It was dismissed summarily, and Petitioner then ---- But you briefed it, right? Yes. I mean, the fact that it was decided on the briefs rather than giving you oral argument, it's the same argument that you made the last time around. You're not raising a new argument, are you? This is true. But this was a petition that was then filed as a habeas petition with the district court, which had jurisdiction at that time, and then transferred here when that court lost jurisdiction. But the habeas court could have also been banned by the law of the case had you ever gotten to the merits of that, if this scenario was correct. So that doesn't get you anyplace. It's still the same problem, whether it's there or here. I see. So to me, the question is, is it the same question? Is it really the same question on jurisdiction and on the merits of a removal? Is the burden of proof the same, for example? The burden of proof, I mean, that is our argument, is that the government did not meet the burden of proof in this case. And that has been throughout the first petition and now the second petition for review. Well, the difficulty here is that under our law, the merits inquiry collapses with the jurisdictional inquiry, and we necessarily had to have decided the merits issue or the sufficiency argument in order to dismiss for lack of jurisdiction before. I mean, that's the conundrum. May I ask you a question on the due process claim that you also asserted? If I understand it, you've got two arguments, one of them being that your statutory rights were violated by the IJ's not allowing cross-examination of the agent, and the other is that you've got your constitutional due process rights were violated for the same reason. My question is, if I understand your theory or what the testimony was, your client said, look, I made the statements that the agent recorded. It's just that the statements that I made weren't correct. That is, I really didn't know that this stuff was marijuana, although that's what I said. So since he concedes that what he said was correct, what difference does it make that cross-examination of the agent was not allowed? The difference is that Mr. Chavez never got the opportunity to review his actual statements. All that's in the record is this I-213 report that records his alleged statements. Well, he agreed that he made those statements. That's what I'm saying. He just says that what I said wasn't right. But he agreed he made the statements. So I just don't get, I guess, I'm having trouble getting why cross-examination is at all material. Well, the fact of the matter is that throughout the record, Mr. Chavez, on at least six opportunities, denies having had knowledge of the case. But never having said it. So what good was he going to do to put this person on the stand? What were you going to ask him? You were going to ask him whether he said it, and he was going to say yes, and Mr. Chavez agreed he said it. So what was the point? Well, the point is that there the government throughout this proceeding kept all the evidence in their back pocket. The agent showed up to the court to testify, but they were never called. There was allegedly a videotape that was supposed to look very embarrassing to Mr. Chavez, but that was never introduced. But ultimately, what the IJ had to decide here was whether, although Mr. Chavez said this because he said he said it, he now says it wasn't so. So which Mr. Chavez are you going to believe, the second Mr. Chavez or the first Mr. Chavez? Now, she never put it that way, and maybe that's a problem, but the cross-examination doesn't seem to be getting any place, to have any chance of getting any place. Well, there's certainly no explicit credibility finding made here by either the board or either of the two immigration judges. It's a whole different problem, and there may also be a problem, again, if the burden of proof now is clear, convincing, and unequivocal evidence or whatever it usually is on removal, which is sort of a problem given the statutory scheme here, then maybe that doesn't exist because you have only the 213 versus what Chavez said in the stand, and no lack of credibility finding. But that's a different problem from what good the cross-examination was going to do and what good it was going to do you. Well, it's somewhat speculative because we don't know exactly what the agent would have testified to. I mean, do you really think the agent would get on the witness stand and say, well, I wrote that in my report, but I really didn't believe him when he said it? Is that what you're looking for on cross-examination? Well, Mr. Chavez on cross would have had the opportunity to explore what was the context of this discussion. I mean, he admits to the immigration judge that he felt fear. He was afraid that he requested to speak to an attorney, and none of that was really taken into account when the immigration judge made her finding. So what you're saying, essentially, is that he might have been able to get something out that corroborated his account, that he said it but didn't mean it. Yes, that's correct, Your Honor. I see that my time has expired. Thank you for your argument, Mr. Rotman. We'll now hear from Ms. Cohen. Good morning, Your Honor. As may it please the Court. My name is Rebecca Cohen, assistant United States attorney, here representing the government. I'd like to begin with going back to the jurisdictional question that the Court started with in counsel's presentation. This Court previously decided that it had no jurisdiction to review the Petitioner's order of removal. By the time that determination was made, the Real ID Act had not yet been passed. And the Court made a threshold determination that there was substantial, reasonable, and probative evidence to believe that the Petitioner had engaged in the illegal trafficking of a controlled substance. Let me ask you something. Is that what it decided, or was there reasonable, et cetera, evidence to have a reasonable belief that he engaged in that? Now, we have this reasonable belief problem running through part of the statute, but some of the relevant statutory provisions, but not others. You're correct, Your Honor. What the Court would have been looking at would be the language in Section 212a2 of the Immigration and Naturalization Act. So what they – what this Court determined was that there was a substantial, reasonable, and probative evidence to believe that an immigration officer had reason to believe that the Petitioner had engaged in illegal trafficking. Now, is that the question that would – in order for an LPR, an illegal – what is it? Legal permanent resident. Political permanent resident. To be considered as applying for admission rather than as being deported, he has to have an LPR status. So wouldn't you have to – isn't that Merit's question really different, because there would have to be clear, convincing, and whatever it is, evidence to get him out of LPR status that he actually committed the crime? So it's different. Actually, Your Honor, it is not a different question. Although a lawful permanent resident who's trying to come back through the border is not normally considered an applicant for admission, according to Section 112a2, Section 101a13 of the Immigration and Naturalization Act, if there is – if an immigration officer has reason to believe – it's the same standard. It doesn't say reasonably. It says committed. That statute does not say reasonably. Section 101a213 cross-references Section 212a2, which is the language we're talking about, which is an immigration officer has reason to believe – knows or has reason to believe that he's a trafficker and a controlled substance. They cross-reference back to each other. It says an offense – it has committed an offense identified in Section 212a2. Sorry, Your Honor. Let me just get a minute to get the statute. I think that's all. That's right, Your Honor. I'm sorry. I'm not finding the exact statutory site in my notes. I think what's important, though, is that this Court previously looked at the jurisdictional question pre-Real ID Act. The Court determined that there was reason to believe that the Petitioner knew he was engaging in illicit trafficking activity. Now, we would concede that because of the passage of Real ID, there is jurisdiction for the Court now to look at the order of removal. But that doesn't take away the point that Judge Tolman made earlier about law of the case and the fact that – All right. Did you raise this issue in your brief? The law of the case problem? No. All right. Is it a merits problem as opposed to a jurisdiction problem? Now? Is it now a merits problem?  So have you waived it? I don't think we've waived it. We've argued for the standard of review that we're now – Well, we have to reach on the merits. But if you waive the argument, that's already been decided. Your Honor, I don't know the answer to the question. I don't – Can you waive our looking ridiculous? I'm sorry, Your Honor. I can't hear you. Can you waive this Court's looking ridiculous? I would hope not, Your Honor. I would like to go back to the question of whether there is now a lesser or a more strict standard of review for this Court, because we've already determined that in the previous case there wasn't a determination made. And on that, I would look to statutory side itself. In Section 242.8.4 of the Immigration and Naturalization Act, it says that an immigration judge's finding that an alien is inadmissible is conclusive unless manifestly contrary to the law, and that manifestly contrary to the law is an even more deferential standard of review than the substantial, reasonable, and probative evidence standard that was used by this Court in the earlier case. So I would say that clearly, if there was enough deference to the immigration judges under the lesser standard to believe that he knew he was engaging in illicit trafficking, then under the higher level of deference that's now at issue before the Court, clearly the same determination is required. Well, but that's really complicated, isn't it? I mean, do we have any law about how you get bumped out of LPR status under 101A13C or whatever it is? Because before you get to the fact that he is seeking admission, you first have to get him to that point from being an LPR who ordinarily isn't seeking admission. What's the burden of proof on that? Do we have any case on that? It would seem to me it has to be the same as the removal standard. Otherwise, you're in a sort of unending circle. But whatever it is, do we have any law on that? Your Honor, here again I would go back to the statute. And I have now found the statutory site in my notes. In Section 101A13, Your Honor is correct that an LPR is regarded as seeking admission to the United States if he has committed an offense identified in Section 1182A2 of this title. So then I would look at Section 1182A2, and they've committed an offense identified in that section if an immigration officer knows or has reason to believe that they've engaged in the illicit trafficking of controlled substance. Let's assume that's true, although I don't know if it's true. That still leaves the question of whether the admissibility standard applies to that question at this juncture in the inquiry. Your Honor, at this juncture, I would say that it wouldn't make sense to look at anything beyond the charging documents and the actual finding by the immigration judges in this case. The charging documents charged him as inadmissible. They did not charge him as deportable. And the immigration judges both found that he was inadmissible, not deportable. So I think that the reviewing court would have to look at the burden of proof that applied for inadmissible aliens and not for deportable aliens. Unless the Court has any other questions on this issue, I would just like to briefly turn to the cross-examination issue, since I am running out of time quickly. In this case, the Petitioner has challenged the immigration judge's ability to rely on the Form I-213 without giving him an opportunity to cross-examine the authors of that document. In Espinoza, this Court clearly held that a Form I-213 is admissible and presumptively reliable without giving the alien a right to cross-examination of the authors of the document, as long as the alien hasn't presented any evidence to the contrary. And here, I think that decision in Espinoza applies directly, because if you look at the statements in the Form I-213 itself, what it actually said is, in his videotaped statement, Petitioner admitted that he knew there was marijuana in the car, that he knew it was illegal to drive it over the border, and that he was paid $1,000 by a man in Mexico to do so. At the immigration hearings, he admitted that he'd made those statements. So there was no evidence he would have put on to the contrary that would have actually changed the results here or that would have, you know, made it so that the immigration judge had to let him cross-examine the witnesses. It was clear that he wasn't contesting what the witnesses would have said. So, you know, any potential cross-examination wouldn't actually have changed the outcome of those decisions. And Espinoza would therefore say that there was a right to just rely on those documents without further cross-examination. And the same analysis would apply to due process, because there was no likelihood that the results of the hearing would have been changed. Judge Counsel, Judge, I think it was, is it Josephson, the Seattle IJ? That's correct. Indicated that he was going to go back and review the evidence that was before the Otay Mesa immigration judge. Is there anything in the record that tells us whether or not Judge Josephson actually did that? Your Honor, there's nothing in the record that I've seen that says, answers the question in either direction. He may have, he may have not have. I just don't know. And so we don't know whether either he or the first IJ ever looked at the videotape. It's not in the record. I don't know. All right. Thank you, Your Honor. All right. Thank you, Counsel. Both of you. The matter just argued will be submitted.
judges: Rymer, Berzon, Tallman